**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| DANIEL W. CURRY,<br><br>Plaintiff,<br>v.<br><br>FEDERAL BUREAU<br>OF INVESTIGATION, *et al.*,<br><br>Defendants. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: | Civil Action No. 18-0439 (EGS) |

**MEMORANDUM OPINION**

I. Introduction

This matter, brought pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, was filed on February 16, 2018, by Plaintiff Daniel W. Curry, proceeding *pro se*.[1] *See* Complaint, ECF No. 1. On March 24, 2023, the Court entered a Memorandum & Order ("MO"),[2] ECF No. 54, granting, in large part, the unopposed Motion for Summary Judgment, ECF No. 51, filed by Defendants, the Federal Bureau of Investigation and its Director, Christopher Wray.[3]

[1] The Court notes that, despite its continued efforts to serve and communicate with Plaintiff, its independent efforts to locate and update Plaintiff's changes of address of record, and without a single mailing returned as undeliverable, he has nonetheless failed to participate in this case for nearly five years, *see* Pl.'s Motion for The Court to Authorize Immediate Objections, ECF No. 21 (filed Mar. 18, 2019) (representing Plaintiff's last submission in this case).

[2] For purposes of judicial economy, Court hereby incorporates herein, in full and by reference, the entirety of its previous Memorandum & Order, ECF No. 54.

[3] The FOIA only authorizes suit only against federal agencies, *see* 5 U.S.C. §§ 551(1), 552(a), and does not create a right of action against individuals, *see Prison Legal News v. Lappin*, 436 F. Supp. 2d 17, 21 (D.D.C. 2006) (collecting cases). Therefore, the Court dismissed Wray from this case with prejudice. *See* MO at 1 n.1.

However, the Court also found that it required more information relating to four specific subject areas, namely, the FBI's withholdings pursuant to: (1) "Exemption (b)(3)-3: 31 US.C. § 5319 (Bank Secrecy Act);" (2) "Exemption (b)(7)(A)-1: Information the Disclosure of which Could Reasonably be Expected to Interfere with Pending Enforcement Proceedings;" (3) "Exemption (b)(7)(E)-9: Internal FBI Secure Telephone Number, Email Address. Internal Web Address," and; (4) "Exemption (b)(7)(E)-l l: Statistical Information Contained in Effectiveness Rating FD-515." *See* MO at 60. The Court found that the FBI had failed to clearly identify the documents withheld under these Exemptions. *See id.* at 12, 18–19, 28–29, 51–55, 57, 60.

Consequently, the Court provided the FBI with an opportunity to submit supplemental briefing as to those four subject areas, *see id*., which it has since completed, *see* Notice of Filing of Second Declaration and Vaughn Index, ECF No. 58; Second Declaration of Michael G. Seidel ("Seidel Decl. II"), ECF No. 58-1; Updated Vaughn Index ("FBI VI II"), ECF No. 58-2. Upon review, the Court finds that the FBI has now clearly identified the documents and information withheld under those Exemptions, and it has thus fully carried its burden. *See Mead Data Cent., Inc. v. Dep't of Air Force*, 566 F.2d 242, 251 (D.C. Cir. 1977)). Accordingly, summary judgment is now entered on behalf of the FBI, in full, for the reasons explained below.

II. Remaining FOIA Exemptions

- 5 U.S.C. § 552(b)(3) ("Exemption 3"):

First, the Court reexamines the FBI's reliance on Exemption 3, strictly as it applies to protected information that the FBI obtained through the Bank Secrecy Act ("BSA"), Titles I

and II of Public Law 91–508, as amended, codified at 12 U.S.C. § 1829b, 12 U.S.C. §§ 1951–1959, and 31 U.S.C. §§ 5311–5332, enacted before 2009. *See* First Declaration of Michael G. Seidel ("Seidel Decl. I"), ECF No. 51-3, ¶¶ 41, 44.

Pursuant to Exemption (b)(3), an agency may withhold information "specifically exempted from disclosure by statute," 5 U.S.C. § 552(b)(3), so long as the statute:

> (A)(i) requires [withholding] from the public in such a manner as to leave no discretion on the issue; or (ii) establishes particular criteria for withholding or refers to particular types of matters to be withheld; and
>
> (B) if enacted after the date of enactment of the OPEN FOIA Act of 2009, specifically cites to this paragraph.

*Id.* To prevail on summary judgment, the FBI "need only show that the statute claimed is one of exemption as contemplated by Exemption [(b)(3)] and that the withheld material falls within the statute." *Larson v. Dep't of State*, 565 F.3d 857, 865 (D.C. Cir. 2009) (citation omitted).

The BSA requires financial institutions to file financial reports that can be used, if necessary, in criminal, tax, and regulatory matters, to combat money laundering and enforce compliance. Seidel Decl. I ¶ 42; *see Inst. for Just. v. IRS*, 547 F. Supp. 3d 1, 4–5 (D.D.C. 2021) (explaining same). Those reports, and the records of those reports, are explicitly exempt from disclosure under the FOIA. Seidel Decl. I ¶ 14 (citing 31 U.S.C. § 5319); *Inst. for Just.*, 547 F. Supp. 3d at 11 (finding that BSA-related information directly quoted in other records and memoranda outside of the reports was properly withheld under Exemption 3) (citing *Ortiz v. DOJ*, 67 F. Supp. 3d 109, 118 (D.D.C. 2014)).

Here, the FBI withheld BSA-related information that was initially produced "during the course of criminal investigative activities." Seidel Decl. I ¶ 44. The FBI obtained this information from Financial Crimes Enforcement Network ("FinCEN"), a U.S. Treasury "multisource intelligence and analysis network[,] that implements the BSA, that also promulgated its own regulation to exempt its BSA records from disclosure, *id.* ¶¶ 41, 44 (citing 31 C.F.R. § 103.54). More specifically, the FBI now attests that it withheld FinCen-sourced information contained in a single electronic communication ("EC").[4] *See* FBI VI II at 1 (withholding in part Bates No. 43); Seidel Decl. I ¶ 43 n.27; Seidel Decl. II ¶ 4; *id*. at n.1. With the relevant documents and information identified, and with no opposition from Plaintiff, the Court finds that the FBI properly withheld this information from the EC, as it was originally "derived from reports generated pursuant to the Bank Secrecy Act, and the Act deems such reports exempt from disclosure under the FOIA." *Ortiz*, 67 F. Supp. 3d at 119.

- 5 U.S.C. § 552(b)(7)(A) ("Exemption 7(A)")

Second, the Court reassesses the FBI's invocation of Exemption 7(A). *See* Seidel Decl. I ¶¶ 55–56. Exemption 7(A) protects "records or information compiled for law enforcement

[4] "Electronic Communications (ECs)/ FD-1057s: ECs replaced the traditional FBI correspondence (i.e., Memoranda and Letters) as the primary vehicle of correspondence within the FBI. The purpose of an EC is to communicate within the FBI in a consistent format that can be uploaded by the originating Division or office, transmitted, and downloaded by recipient Divisions or offices within the FBI's internal computer network. These forms are often utilized to record and disseminate intelligence/investigative information and for general investigation administration purposes." FBI VI II at Introduction.

purposes" so long as producing them "could reasonably be expected to interfere with enforcement proceedings." 5 U.S.C. § 552(b)(7)(A). It is meant "to prevent disclosures which might prematurely reveal the government's cases in court, its evidence and strategies, or the nature, scope, direction, and focus of its investigations, and thereby enable suspects to establish defenses or fraudulent alibis or to destroy or alter evidence." *Maydak v. DOJ*, 218 F.3d 760, 762 (D.C. Cir. 2000), *cert. denied*, 533 U.S. 950 (2001). The Exemption "reflects the Congress's recognition that 'law enforcement agencies ha[ve] legitimate needs to keep certain records confidential, lest the agencies be hindered in their investigations or placed at a disadvantage when it [comes] time to present their case.'" *Citizens for Resp. & Ethics in Wash. v. DOJ*, 746 F.3d 1082, 1096 (D.C. Cir. 2014) (alterations in original) (quoting *N.L.R.B. v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 224 (1978)). An agency may withhold law enforcement records under Exemption 7(A) if it demonstrates that "disclosure (1) could reasonably be expected to interfere with (2) enforcement proceedings that are (3) pending or reasonably anticipated." *Id.* (quotation omitted).

Exemption 7(A) "does not authorize automatic or wholesale withholding of records or information simply because the material is related to an enforcement proceeding." *North v. Walsh*, 881 F.2d 1088, 1097 (D.C. Cir. 1989). Defendant "must show, by more than [a] conclusory statement, how the particular kinds of investigatory records requested would interfere with a pending enforcement proceeding." *Campbell v. DHSS*, 682 F.2d 256, 259 (D.C. Cir. 1982). "[T]he government need not justify its withholdings document-by-document; it may instead do so

category-of-document by category-of-document." *Crooker v. ATF*, 789 F.2d 64, 67 (D.C. Cir. 1986).

The FBI "asserted Exemption 7(A) in a limited fashion to protect a pending investigative FBI File number within the responsive records." Seidel Decl. I ¶ 56. Seidel attests that "[t]he release of this information would reveal unknown information concerning pending enforcement procedures, to include the existence of unknown investigations[,]" and would "provide criminals with information about the government's investigation/enforcement strategies in ongoing matters, allow them predict and potentially thwart these strategies, and/or allow them to discover/tamper with witnesses and/or destroy evidence." *Id.* More specifically, the FBI now attests that it redacted the relevant FBI file number from certain ECs. *See* FBI VI II at 4, 9, 15, 20 (withholding in part Bates Nos. 355, 657, 899, 1323); Seidel Decl. II ¶ 4; *id.* at n.1. Plaintiff has, once again, offered nothing in the way of opposition.

Given the FBI's provision of this supplemental information, the Court finds that the file number was properly redacted under Exemption 7(A), because "[a]s of the filing of [its] [D]eclaration, the investigations were 'pending' and 'ongoing,' satisfying the temporal requirements of Exemption 7(A)." *Poirtras v. DHS*, 303 F. Supp. 3d 136, 157 (D.D.C. 2018) (upholding withholding of "file numbers of pending FBI investigations[]" under Exemption 7(A)).

- <u>5 U.S.C. §§ 552(b)(7)(E) ("Exemption 7(E)")</u>

Finally, the Court limitedly reviews the FBI's redaction of information under Exemption 7(E). *See* Seidel Decl. I ¶¶ 81–102. Exemption 7(E) protects from disclosure law enforcement

records "to the extent that the production of such law enforcement records or information . . .would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law[,]" 5 U.S.C. § 552(b)(7)(E).  Under this Exemption, the D.C. Circuit has "set a relatively low bar for the agency," requiring it only to "demonstrate logically how the release of the requested information might create a risk of circumvention of the law." *Blackwell v. FBI*, 646 F.3d 37, 42 (D.C. Cir. 2011).  Any information that "could increase the risks that a law will be violated" is protected from disclosure. *Mayer Brown LLP v. IRS*, 562 F.3d 1190, 1193 (D.C. Cir. 2009); *see Fisher v. DOJ*, 772 F. Supp. 7, 12 (D.D.C. 1991) (upholding FBI's decision to withhold information about law enforcement techniques where disclosure would impair effectiveness and, within context of documents, could alert subjects of investigations "about techniques used to aid the FBI"), *aff'd*, 968 F.2d 92 (D.C. Cir. 1992).  The FBI withheld ten categories of information under Exemption 7(E), *see* Seidel Decl. I ¶¶ 84–102, but only two of those ten categories remain in controversy.

The first category relates to the FBI's redaction of "protected phone numbers, internal e-mail addresses, and non-public intranet web addresses." *See* Seidel Decl. I ¶ 97.  The FBI attests that such release would out the agency at risk for cyber-attacks on FBI secure communications by criminals and hackers, and from there, they could "gain unauthorized access to FBI systems, view and/or manipulate sensitive investigative data, interfere with the FBI's non-public intranet protocol, and/or hinder the FBI's ability to enforce the law by disrupting the FBI's internal

communications." *Id.* More specifically, it redacted this type of information from an internal email, a Forfeiture/Seized Property Checklist Form ("FD-634"),[5] and Case Activity Tracking System ("CATS") Fire Forms.[6] *See* FBI VI II at 15, 37, 39, 41–42, 49, 55–59, 61–64, 72–74, 76–82, 93, 95–96, 103 (withholding in part Bates Nos. 920, 3079–82, 3128–29, 3273–76, 3294–95, 3297–98, 3339–41, 3686–88, 3955, 3975–78, 3994–95, 4117–20, 4144–45, 4247–50, 4274–75, 4389–90, 4414, 4454–57, 4475, 4478, 4576–78, 4896, 4910–11, 4936, 4976–79, 4997–98, 5000–01, 5054–56, 5173–74, 5188, 5227–30, 5249, 5253, 5304–06, 5394, 5414, 5434–37, 5456–58, 5561–64, 5588–89, 6186–89, 6213–14, 6320, 6341–44, 6360, 6735–38, 6762–63); Seidel Decl. I ¶ 97 n.34; Seidel Decl. II ¶ 4; *id*. at n.1.

Given this supplemental information, the Court concludes the information was properly withheld from the identified internal documents. Internal website and email information of this kind falls well within the ambit of Exemption 7(E), *see Ford v. Dep't of Justice*, 208 F. Supp. 3d 237, 254 (D.D.C. 2016) (citing *Tracy v. DOJ*, 191 F. Supp. 3d 83, 96 (D.D.C. 2016)), *aff'd*, 664 Fed. Appx. 8 (D.C. Cir. 2016), as do phone numbers, *see Shapiro v. Dep't of Justice*, 78 F. Supp. 3d 508, 520 (D.D.C. 2015).

The second remaining category of information at issue involves the FBI's "FD-515s"—forms used by FBI supervising agents to report investigative accomplishments and statistically

---

5 "FD-634 Forfeiture/Seized Property Checklist Form: Used to inform FBIHQ as to what documents are included as well as any required information." FBI VI II at Introduction.

6 "Case Activity Tracking System (CATS) Fire Form: Used to document items seized and includes information such as: location of seizure, owner, and value." *Id.*

significant events—i.e., "recovery of stolen property, an arrest, or a conviction"—as fruits of a criminal investigation. *See* Seidel Decl. I ¶ 99; FBI VI II at Introduction. These forms include a portion itemizing and describing "Investigative Assistance and Techniques Used." Seidel Decl. I at 99–100. The listed techniques/assistances are also each associated with a noted numerical rating which assesses their respective effectiveness. *Id.* ¶ 100. The FBI redacted the details relating to those ratings for the techniques/assistances used in Plaintiff's criminal investigation. *See id.* at 100–101. The FBI indicates that redacting such information is meant thwart those "others involved in similar criminal activities could change their methods and modus operandi" based on the level of success of the FBI strategies employed in Plaintiff's investigation. *See id.* ¶ 100.

The FBI also redacted the "Assisting Agencies" category, derived from the FD-515s, pursuant to "standard RIDS processing policy[,]" in an effort to protect information regarding any other federal, state, or local law enforcement that may have assisted the FBI in its investigation of Plaintiff and others. *Id.* ¶ 101. Seidel indicates that the release of this information risks emboldening such criminals to continue undetected criminal activities and would further allow criminals to "judge law enforcement agencies' strengths and weaknesses in regard to detecting/disrupting particular criminal activities; structure their activities to exploit this knowledge; and successfully evade law enforcement agencies' efforts to enforce the law." *Id.*

Last, the FBI redacted the FD-515's standard listings of "Subject Description Codes." *Id.* ¶ 102. Seidel explains, with corresponding examples, that these codes are often associated with "the individual indicted/arrested/convicted" and revealing them "would immediately describe the

nature of FBI's gathered criminal intelligence on the individual, and the level of the FBI's investigative focus." *See id*. The FBI would then be at risk of exposing "whether or not [it] has detected particular criminal activities," which would enable criminals to "preemptively destroy other incriminating evidence, and/or embolden them to continued undetected criminal activities." *Id.*

In sum, the FBI redacted these pieces of information from within the FD-515s themselves, and from other types of internal documents where the same information was transcribed or discussed, including, an EC, an internal Memorandum,[7] FD-430s,[8] and FD-302s.[9] *See* FBI VI II at 1, 3, 6, 8–11, 18–22, 37–39, 42, 49 , 51, 55, 57–60, 64, 71, 74–75, 78–79, 81–82, 93, 95, 103 (withholding in part Bates Nos. 17–20, 253, 255, 257, 264, 266, 459, 504, 507, 586, 591, 593, 595, 620, 623–24, 627, 650, 684, 701, 733, 735, 1028–29, 1031–32, 1092–93, 1095–97, 1099, 1101–02, 1104–05, 1107–08, 1179, 1181, 1183, 1185, 1193–94, 1197, 1199–1200, 1325, 1327, 1348, 1351, 1353, 1356–57, 1360–61, 1364, 1366, 1368–72, 1377, 1390, 1392–93, 1395, 1418, 1422,

---

[7] "Memorandum: These are ordinarily communications to DOJ officials, from one person to another at FBIHQ, or from one person to another within an FBI field office. They serve to assist in the overall supervision of a case by summarizing pertinent details of an investigation." FBI VI II at Introduction.

[8] "FD-430 Bank Robbery Statistical Summary: Provides statistical information for each bank robbery such as: violation and solution, institution or institution type, loot, injury, death, hostage, and armored carrier." *Id.*

[9] "FD-302s are internal FBI forms in which evidence is often documented, usually the results of FBI interviews. Such evidence and/or interview information may later be used as testimony or evidence in court proceedings/trials. Additionally, these evidence/interview forms are often incorporated in other FBI documents which disseminate intelligence/investigative information, and can be utilized to set leads in furtherance of the FBI's investigative efforts." *Id.*

1428, 1431–32, 1435–36, 1439–40, 1443–44, 1447–48, 1451–52, 1455–56, 1459, 3061, 3105, 3214, 3327, 3650, 3771, 3942, 3986, 4068, 4136, 4215, 4266, 4356, 4568, 4874, 5037, 5143, 5287, 5392, 5445, 5531, 5580, 6205, 6307, 6687, 6754); Seidel Decl. I ¶ 99–102; *id.* ¶ 99 n.93; Seidel Decl. II ¶ 4; *id*. at n.1.

The Court finds that FD-515-related information was properly redacted under Exemption 7(E), that the FBI has properly described each category and how release of that information would risk circumvention of the law, and it has now identified the materials that were, in fact, redacted. *See id*; *see also Dalal v. United States*, No. 16-1040, 2022 WL 17092863, at *25 (D.D.C. Nov. 21, 2022) (holding that this type of information is properly withheld from FD-515s under Exemption 7(E)); *Shapiro v. Dep't of Justice*, No. 12-cv-313, 2020 WL 3615511, at *37 n.34 (D.D.C. July 2, 2020) (same); *Garza v. USMS*, No. 16-0980, 2018 WL 4680205, at *16 (D.D.C. Sept. 28, 2018) (same), *aff'd*, No. 18-5311, 2020 WL 768221 (D.C. Cir. Jan. 22, 2020).

III. Conclusion

For the reasons explained above, the Court finds that the FBI has now provided a sufficient supplemental *Vaughn* index allowing for "adequate adversary testing of the agency's claimed right to an exemption," containing "an adequate description of the records" and plainly stating "the exemptions relied upon to withhold each record[,]" *Nat'l Treas. Emps. Union v. Customs Serv.*, 802 F.2d 525, 527 n.9 (D.C. Cir. 1986)[,] as it relates to the remaining categories of withheld information, namely, "Exemption (b)(3)-3" (withholdings under the BSA), "Exemption (b)(7)(A)-1" (withholding of FBI investigative file number), "Exemption (b)(7)(E)-9" (withholding of

internal FBI telephone numbers, email addresses, and web addresses), and "Exemption (b)(7)(E)-11" (withholdings arising from the FD-515s).

Furthermore, the FBI has now met its burden to "disclose all reasonably segregable, nonexempt portions of the requested record(s)[,]" *Roth*, 642 F.3d at 1167 (internal quotation marks and citation omitted), by providing "a detailed justification and not just conclusory statements to demonstrate that all reasonably segregable information has been released[,]" *Valfells v. CIA*, 717 F. Supp. 2d 110, 120 (D.D.C. 2010) (internal quotation marks and citation omitted), *aff'd sub nom. Moore v. CIA*, 666 F.3d 1330 (D.C. Cir. 2011), as to the aforementioned categories of information, *see, e.g.*, Seidel Decl. I ¶¶ 34–35; 108–09; Seidel Decl. II ¶¶ 4–5; *see generally* FBI VI II. Moreover, Plaintiff has not provided the Court with any reason to question the good faith presumption afforded to the FBI's segregability representations. *See Johnson v. Exec. Office for U.S. Attorneys*, 310 F.3d 771, 776 (D.C. Cir. 2002).

Accordingly, Defendants' Motion for Summary Judgment, ECF No. 51, is GRANTED in full, and judgment shall be entered on its behalf. An Order consistent with this Memorandum Opinion is issued contemporaneously.

Date: January 2, 2024

_______/s/_______________
EMMET G. SULLIVAN
Senior United States District Judge